

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN
XXPHOTOGRAPHYXXXXXXXXXX D
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable O. P. Lockhart, Chairman
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. O-4289
Re: May the Life Insurance Commis-
sioner and Chairman lawfully make
trips to foreign states to examine
into the affairs of certain foreign
life insurance companies, etc., rather
than send a designated actuary, ex-
aminer or other person, and related
questions?

Your letter dated March 19, 1942, requesting an opinion of
this department, reads as follows:

"A particular occasion has arise in which the Life
Insurance Commissioner (or officio Chairman of the Board
of Insurance Commissioners) finds it more expedient to
go in person to foreign states for the purpose of examin-
ing into the affairs of certain foreign life insurance
companies, having certificates of authority from this
Board to conduct life insurance business in Texas, than
to designate the Actuary, or any examiner or other person
to make such a trip, examinations and investigations
for him.

"In connection with this and any similar occasional
situation which may arise while the laws remain as they
a re, we desire your opinion upon the following points:

"1. May the Life Insurance Commissioner and Chairman
lawfully make such trips, examinations and investiga-
tions in person, rather than through a designated
Actuary, examiner or other person?

"2. In the event of an affirmative answer to Number 1,
must he do so only in his capacity as Life Insurance
Commissioner and Chairman of the Board or may he, for
the duration of such trip, as are our examiners, remove
himself from the payroll of the Commission as Life
Insurance Commissioner and Chairman (thus allowing the
Chief Clerk to serve as Acting Life Insurance Commis-
sioner and Chairman during his absence) and make the
trip, examination and investigation in the capacity
of examiner, designated for such purpose by himself
as Chairman of the Board?

"3. In making such trip either in his capacity as
Life Insurance Commissioner and Chairman or in a
capacity as examiner designated by himself for such
purpose, would he necessarily be limited to his
statutory compensation of $6000 per year as Commis-
sioner and Chairman ($20 per diem on the basis of
300 working days per year, or $16.43 per diem on the
basis of 365 days per year), plus the $4 per day max-
imum travel expense allowed by the present annual
departmental appropriation bill (SB 423, Act 1941,
47th Leg., Reg. Sess.), or would it be permissible
for him under the retaliatory provisions of the statutes
hereinafter cited to charge the Examination Fund, to be
reimbursed by the examined foreign companies, with the
larger per diem compensation and travel expense allow-
ance permissible under such retaliatory provisions and
required by the laws of the home states of such examin-
ed foreign companies to be charged for examinations of
Texas companies by examiners from their states?

"  .  .  .  "

Article 4690, Vernon's Annotated Revised Statutes, reads as
follows:

"The Chairman of the Board of Insurance Commission-
ers shall, once in each two years or oftener if he deems
necessary, in person or by one or more examiners commis-
sioned by him in writing, visit each company organized
under the laws of this State and examine its financial
condition and its ability to meet its liabilities, as well
its compliance with the laws of Texas affecting the con-
duct of its business; and he may similarly in person or
by one or more commissioned examiners, visit and examine,
either alone or jointly with the representatives of the
insurance supervising departments of other states, each
insurance company not organized under the laws of this
State but authorized to conduct business in this State."

Article 4691 of the Revised Statutes reads as follows:

"The Board of Insurance Commissioners for the pur-
pose of examination authorized by law, has power either
in person or by one or more examiners by him commissioned
in writing; . . .

"(3) To visit at its principal office, wherever sit-
uated, any insurance company doing business in this State

for the purpose of investigating its affairs and
conditions, . . .

"The reasonable expenses of all such examina-
tions shall be paid by the company examined."

In our opinion, question number 1 should be answered in the
affirmative. The statutes above quoted, we think, authorize the Chairman
of the Board of Insurance Commissioners to make the examinations of com-
panies writing insurance, either in person or by his duly appointed ex-
aminers, regardless of whether the company is a domestic or a foreign
corporation.

Answering question number 2, the Chairman of the Board of
Insurance Commissioners, if he makes the examination, does so as Commis-
sioner, and not as an appointed examiner.

Article 4690a, of the Revised Statutes, reads:

". . . In case of an examination of the company
not organized under the laws of Texas, whether such
examination is made by the Texas authorities alone,
or jointly with the insurance supervisory authorities
of another state or states, the expenses of such exam-
ination due to Texas' participation therein shall be
borne by the company under examination. Payment of
such costs shall be made by the company upon presenta-
tion of itemized written statement by the Chairman, and
shall consist of the examiner's remuneration and expense,
and the other expenses of the Department of Insurance
properly allocable to the examination. Payment shall
be made directly to the Chairman, and all money collected
by assessment of foreign companies for the cost of examin-
ation shall be deposited in the State treasury by the
Chairman to the credit of the insurance examination fund
out of which shall be paid, by a warrant of the State
Comptroller of Public Accounts on voucher of the Chairman
of the Board of Insurance Commissioners, the examiner's
remuneration and expenses in the amounts determined by
the methods hereinafter provided, when verified by their
affidavit and approved by the Chairman; . . . examiner's
remuneration and expenses shall be the same as that which
would be paid by the home state of the company under ex-
amination to persons conducting the examination of a
Texas company admitted to do business in that state."

Article 4690b provides:

"The Chairman of the Board of Insurance Commission-
ers shall appoint such number of examiners . . . as he may
deem necessary for the purpose of making on behalf of the

State and of the Board of Insurance Commissioners all
such examinations of insurance companies, at the ex-
pense of such companies or corporations, as are requir-
ed to be made or provided for by law."

The Appropriation Bill passed in 1941, pages 1184-1188 of the
Acts of the 47th Legislature, appropriated $6,000.00 our of the General
Revenue Fund to pay the salary of the Life Insurance Commissioner and Chair-
man of the Board. It also appropriated certain fixed amounts for the exam-
iners that may be appointed by the Chairman of the Board of Insurance Com-
missioners.

Under the statutes hereinbefore quoted, a life insurance comp-
pany is required to pay the expenses of the examination when made. It in-
cludes the examiner's remuneration, together with all of the expenses inci-
dent to said particular examination. If the examination is made by the
Chairman of the Board of Commissioners himself, there would not be any
examiner's remuneration to be charged, since the Chairman of the Board
would be acting under the powers given him by the Legislature to make the
examination in person. The only expense that could be charged against the
company examined by him would be his expenses, together with any other
expenses of the Department of Insurance properly allocable to such examin-
ation. The Chairman of the Board of Insurance Commissioners is limited to,
and cannot draw more than the $6,000.00 per annum salary appropriated by
the Legislature.

By question number 3 you ask what expenses the Chairman of
the Board of Life Insurance Commissioners could charge if he does in fact
examine a foreign corporation.

Under the provisions of Articles 4690a and 4691, above quoted,
the actual expenses incurred in the examination of a foreign insurance com-
pany is to be paid by the company examined. As we interpret said Articles,
it is immaterial whether the examination is made by the Chairman of the
Board of Insurance Commissioners, or made by one of the examiners appointed
by him. The actual and necessary expenses incurred are to be paid by the
company examined, and when paid, same are to be deposited in the State
treasury, and then the actual expenses incurred by the party or parties
who in fact made the examination are to be paid to said party or parties
on warrants drawn on the State Treasurer. The expression used in the
wuoted protion of Article 4690a above, that the cost of examination shall
consist of "the examiner's remuneration and expenses, and the other expen-
ses of the Department" means the expenses of the party who makes the exam-
ination, and if the Chairman of the Board makes the examination, his
actual expenses should be paid by the examined company. Said Article 4690a
provides that, "Examiners' remuneration and (all) expenses shall be the
same as that which would be paid by the home state of the company under
examination to persons conducting the examinations by the Texas company."
This statute states that the expense paid is the same as would be requir-
ed under examination to persons conducting the examination. If the

Commissioner himself examines a domestic company, the company would be required to pay his actual expenses. In other words, it is not the expenses of the examiners as distinguished from the Commissioner himself when he makes the examination, but it refers to and is intended to cover the expenses of whoever makes the examination, and whatever amount of actual expense is incurred by the party making the examination. All expense money, under the law, when collected, is paid to the Chairman of the Board of Insurance Commissioners, and he is required to deposit it in the State treasury. The actual expense of the party who made the examination is then paid to him "by warrant of the State Comptroller of Public Accounts on voucher of the Chairman of the Board of Insurance Commissioners." If the Commissioner himself made the examination, he would and will be entitled to the actual expenses he incurred and collected from the company he examined. Under the law, when he collects this expense money, he should deposit the same in the State treasury, and then issue to himself a voucher for his said expenses, and obtain a warrant from the Comptroller against said fund. By this method the State can keep a check on the amount collected by the Commissioner as expenses, whether it be for examining a domestic or a foreign company.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By
/s/ Geo. W. Barcus

Geo. W. Barcus
Assistant

GWB:MR:egw

APPROVED JUL 28, 1942
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

This opinion considered and approved in limited conference.